Judge Schroeder, Judge Callahan, Judge Smith, welcome to the beautiful state of Hawaii once again on behalf of the Hawaii Bar. Ironically, I just came back from San Francisco late last night and unfortunately caught a terrible cold on board, so please bear with me as I move along in my argument. The pivotal issue in this case is the December 31, 1991, ABC registration deadline. That's what this case is all about. The congressional record, which is attached to my reply brief almost in its entirety, is actually a very compelling presentation by Senator Abraham at the time that Section 203, what we know the NACRA case, came into existence. Because you don't have a lot of time, it seems to me that one of the areas I want you to discuss, which I think is problematic for you, is that it would appear in Munos v. Ashcroft, which is a Ninth Circuit case, we held that the deadline for registration under NACRA was a statute of repose and not subject to equitable tolling. Since Mr. Hernandez did not register, and that appears to be before December 31, 1991, and that appears to be undisputed, is he not barred from any program that is limited to persons who registered in a timely manner? That seems to be the elephant in the room or the crocodile in the bathtub. Precisely. There is a difference in the Munos case, and I read that very carefully, and I was actually very pleased to see that you raised that point at this point. The biggest difference with the Munos case is that the appellate in that case filed his asylum application in 1997. The difference in our case is that when the NACRA and ABC was conflated by administrative decision, they literally pushed back all the statutory deadlines. And what they did, basically, was in order to allow the NACRA program, because we got to look back at how that developed, there was 13 years in which the government did not review one single application with regard to the special cancellation. And so the point that we make, and I think it's a very solid view about how to administer the program, is that if you file before 1995 for Guatemalans under the unitary process in which the NACRA program was being administered by back then the legacy INS, then we see that because those two programs were joined, that had the notario not defrauded Mr. Hernandez, his application would have been in as early as 1992, Your Honor. But what authority do you have to get around that he didn't register before December 31st, 1991? That seems to be the problem. Absolutely. I understand that, Your Honor. In order to address that, we have to look at the constellation of how this program was administered. This program was very much loosely administered. So the registration, in most cases, was illusory because a lot of the people, as the memorandum very clearly criticizes the government for that, they were, as a requirement, an administrative requirement, I may add, imposing a December 31st, 1991 deadline in order to be eligible for the special rule cancellation. And in reality, a lot of the people that actually registered for it didn't even know, Your Honor, that they were registering for any program. As a matter of fact, there's reference in the INS memorandum that was issued, which is attached as an addendum to the briefs, in which the INS highest officer dealing with these areas basically said that, in many instances, the people that were, in fact, registering didn't even speak Spanish. They were of Mayan dialect. So they were basically putting Xs on these forms. I've seen the forms because I do quite a few of these, and they were just one page in which all you had to do was put an X. Our position is that that is not a sacrosanct deadline. Well, but it seemed that the area that you're talking to, how did the problems experienced by the agency experience with ABC registration and the agency's flexibility in accepting evidence of any effort to register benefit your client when he made no effort to register? That's where I want to give you every opportunity to address that. And I appreciate that, Your Honor. And our position is saying that because the program was flawed, not only operationally but internally, and because the INS at the time extended all these deadlines, what we have, in essence, is an organic overlap. Before there was ever any special rule cancellation, you had the old cancellation standard in which people that were permanent residents that were before the courts in deportation would choose to take a cancellation of removal. When the new law came into existence in 1996, that changed to 10 years. So President Clinton back then said, this isn't fair. Senator Abraham also echoed that very clearly. He said, look, we've been for many years now invested in this program, basically a humanitarian extension of our hospitality and bringing on people into the United States, Salvadorans, Guatemalans, and giving them work permits. And now this new law came into existence in 1996. So they decided to amend that law, if you will, by passing NACRA, which would then give those people a chance to cancel their removal under the old law. Counselor, I guess I'm still back where my colleague was. Based on my review of this evidence, your client didn't do anything about his presence in the United States until his visit with the notario in 1992. Isn't that correct? That is true. So in order for us to get around that, even though it's a notario, we've got to find some way that the statutory language, which is pretty clear on its face, is somewhat amended by something, don't we? Or look at the congressional intent. We don't have to look at congressional intent if the statute is clear and unambiguous, do we? We believe that that would be… If the statute is clear and unambiguous, then I have to go to the legislative intent. In fact, I have quite a few Supreme Court justices, though not all the same, who think legislative intent is not some place I ought to go at all. I appreciate that. And I think that the deadline itself is essentially not a statute of repose inasmuch as it is just an administrative deadline. Are you arguing that 203B is an exception? I'm arguing that the deadline of December 31st is a floating deadline. Based on what? Just the statutory history? Based on the administrative handling of the program. And Senator Abraham, this is what he said, and this is basically what the core of that program was intended to do, Your Honors. And it's very brief, and I'll be glad… Do you argue that the statutory complex is ambiguous in any way? I argue that the statutory framework that was enacted in 203, as it relates to Guatemalans and Salvadorans, was waived in essence by the government when they decided to extend and to conflate NACARA with the ABC program, because the ABC program in essence was used as a conduit in order to provide the applicants of NACARA to have them administratively adjudicated. But to answer specifically your question in terms of how this Court of Appeals can get to that point, I think we look at what Senator Abraham said in very clear and unambiguous terms. He said, Salvadorans and Guatemalans who either applied for asylum before 1990 or were members of the ABC class action suit settled with the U.S. government as well as members of their families will be entitled to receive a hearing on their claims for suspension or withholding an adjustment of the rules or up to those in effect prior to the 1996 immigration law. And this is the sentence that I anchor my argument in, the one that comes up. It says, nothing in the amendment precludes the government from adapting those rules further to the special circumstances of that class. So where did the December 31st... Unless my colleagues have additional questions, you're already a minute over, so then you need to wrap up in the next 30 seconds. Thank you. Where does the December 31st, 1991 deadline arise? That deadline is an administrative deadline that was put into place through the Code of Federal Regulations and the interim regulations in order to administer the program. But the core of the program was to assist the disenfranchised people that were victims of the 1980 strife in Central America. Thank you very much for your attention. Thank you. Good morning. Good morning. May I please quote? My name is Kevin Conway, and I'm here to represent the Attorney General of the United States in this matter. I think that the questions that have arisen from the panel already speak to what the core of this issue is, and that is the congressional language in the statute, the Illegal Immigration Reform and Immigrant Responsibility Act, or IRERA as it's called, as it was amended by NACARA, is clear on two counts. First of all, it's that the determination... I guess that sort of assumes that anything in immigration is very clear. Well, the language is clear. Whatever the result is, obviously that's why we're all here. But there's two things. One is a jurisdictional issue that was not addressed earlier, and that is that a determination by the board as to whether or not an alien satisfied the requirements of IRERA as it was amended by NACARA is final and shall not be subject to any review by this court. Well, let me ask you this then. That sort of goes to what my first question is. Do you agree that although we may not have jurisdiction to determine whether Mr. Hernandez had registered by January 31, 1991, we do have jurisdiction to consider the legal consequences of his failure to do so? Yes, and I believe that's addressed in our brief as well. And that goes into Mr. Kosio's argument, is that somehow this notario's work and the amendments to allowing people to... Actually, let me back up. There were three main deadlines that were here, only one of which did Mr. Hernandez meet, and that was to be in this country before 1990. Every other deadline he missed. So the 1995 deadline really is irrelevant in this case for him to file an asylum application when they change that because that still disregards the statutory language that says he had to have filed an ABC registration by December 31, 1991. He's obviously arguing some equities, but if an otherwise qualified Guatemalan failed to register by January 31, 1991, is there any way that he or she could qualify for relief under NACARA? Not under the ABC settlement, as far as I can tell, because that's a statutory requirement. And as this Court has already found in the Munoz case, that is a statute of repose and not a statute of limitations, which cannot be equitably told. So if you have not filed some sort of registration, in the Chaley-Garcia matter, he didn't file the quote-unquote ABC registration form, but had given some intent to the Court that that's what he intended to do by filing his asylum application. We don't have that case here in the Hernandez matter. In the Hernandez matter, it's undisputed that he filed no registration or made no attempt to file a registration under the ABC settlement. Well, he also argues, I think counsel for petitioner argues, about the delays in processing NACARA. And so in light of the apparent delays in processing NACARA applications, what would be the harm to the government from considering Hernandez's late application? Well, one of the things that I think that we touched on in our brief was that the argument that the administrative problems or the issues that arose via this memorandum from the Department of Homeland Security was not addressed before the Board. So that whole issue was not properly before this Court. Is there any harm in the government? I'm not sure. If you make an exception for one, you have to make an exception for all, and I don't know if there are others who fall in this particular category. But I think that there's a reason why Congress puts language into a statute, and that language has to be followed, unless, as Judge Smith said, that language is ambiguous in some way, and clearly in this case it is not. So what – oh, I'm sorry, go ahead. Is Section 203B an exception to this particular matter? I'm not sure what you – Well, Section 203B says special rules for cancellation of removal, and then it goes through that. It says, Section – Attorney General may cancel removal if the alien described in subsection C-5C-I of this section. So it goes into what the Attorney General might do. Is that an exception? Well, at the time that ARERA was enacted, the rules had changed for cancellation of removal. So what NACARA did was implement the old suspension of deportation rules, which gave – opened the door for some people to – who didn't meet the current cancellation of 240A cancellation. So I guess in that respect, it's an exception to the law that was in place at the time that NACARA was enacted. But it even relates back, does it not, to – especially when you look at 8 CFR 124066, it even relates back to what we're talking about right now, does it not? Exactly, Your Honor. There is nowhere in the case law or in the statutory language does it override or does it replace the December 31st, 1991 deadline for filing for ABC settlement benefits. And that's a requirement that this petitioner has not met, and therefore he's not eligible. He's statutorily ineligible for special rule cancellation of removal. And also he doesn't meet the requirements for under 240B or 240A either. I'm sorry. Go ahead. And your argument really is that even though this was a notario and the notario did some bad things to this particular petitioner, that he didn't even go see the notario until 1992, so it's irrelevant. That's correct, Your Honor. And there is no longer an asylum application even pending before the court because it was withdrawn before the immigration judge. And it was a false application to begin with on its face. Are there any interpretations by the agency regarding the statutes  Well, I mean, I'm not sure what you mean by that. Yes, I think that any constitutional questions, well, any questions of law and any constitutional questions that are raised are issued or reviewed by you de novo, but deference is paid to those because it's interpretations of immigration statutes. All right, so from your perspective, do you see any way for the petitioner to get around Munoz, Abiyo de Leon, and Balam Shook? I don't believe so, Your Honor. I don't have any. I don't think we have any additional questions. Thank you very much. All right. This matter will now stand submitted. The next matter on calendar is Ronny Gallas-Tababa v. Eric Holder, 10-73809. May it please the Court, good morning. Good morning. My name is Emmanuel Guerro, and I represent the petitioner in this case, Mr. Tababa.
judges: Schroeder, Callahan, Smith